IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
DAYTON DIVISION

| | |
|---|---|
| **MARY JOAN BOEHNE**, etc., et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>**C.H. ROBINSON WORLDWIDE, INC.**, et al.,<br><br>    Defendants. | Case No.: 3:23-cv-00158-MJN-CHG<br><br>Judge Michael J. Newman<br>Magistrate Judge Caroline H. Gentry<br><br>**PLAINTIFFS' THIRD SUPPLEMENT IN SUPPORT OF MOTION TO COMPEL** |

Pursuant to the Court's July 21, 2025, Minute Entry, Plaintiffs file this Third Supplement in Support of their Motion to Compel (Doc. Nos. 66 and 69) that explains which discovery issues remain in dispute.

## I. Background

Plaintiffs filed this case in June 2023. In October 2024, after CH Robinson repeatedly ignored, objected to, and evaded discovery by claiming that Defendant truck driver Dayren Rocubert was not driving for it at the time of the crash, Plaintiffs filed a Motion to Compel seeking an order:

(1) striking CH Robinson's objections to Plaintiffs' second and third sets of written discovery;

(2) requiring CH Robinson to provide documents in response to Plaintiffs' second and third sets of written discovery;

(3) requiring CH Robinson's corporate representative to have access to the Navisphere system during his/her upcoming deposition; and

(4) requiring CH Robinson to adhere to its Rule 26(a) disclosure obligations by producing the policies and declaration pages for its entire tower of insurance coverage.

(Doc. No. 66.) In January and February 2025, Plaintiffs twice supplemented their Motion to Compel after learning from a third-party that Rocubert was indeed picking up a CH Robinson load at the time of the crash. (Doc. Nos. 75 and 82.)

1

In response to the supplements, CH Robinson confessed that Rocubert was *en route* to pick up one of its loads. (Doc. No. 79, PageID# 764.) CH Robinson claimed, however, that this load was "new information." (*Id*.) Robinson's response asserted that the original searches performed did not reveal the load, and that prior to recent developments, "C.H. Robinson had no indication that Rocubert or BLF Truck was to receive a load brokered by C.H. Robinson following the delivery of the load to Washington Courthouse, Ohio." (*Id*., PageID# 765, 770.)

This was just more misdirection. The crash report that has long been in Robinson's possession reflects that Rocubert was on his way to Bryant Indiana to pick up another load. (Doc. No. 82-2, PageID# 826.) And, as Plaintiffs suspected, recent documents produced reveal that the load did not appear in earlier productions because, despite Plaintiffs' request for BLF's entire load history, Robinson unilaterally produced a truncated BLF load history cutoff in December that did not capture the load.

## II.     Items still in dispute

Three of Plaintiffs' four requests for relief in their original Motion to Compel remain completely undecided:

(1)     Whether the Court should strike CH Robinson's objections to Plaintiffs' second and third sets of written discovery;

(3)     Whether the Court will require C.H. Robinson's corporate representative to have access to the Navisphere system during his/her upcoming deposition; and

(4)     Whether the Court will require C.H. Robinson to adhere to its Rule 26(a) disclosure obligations by producing the policies and declaration pages for its entire tower of insurance coverage.

(Doc. No. 66.) Despite all the hurdles CH Robinson has made Plaintiffs jump, its Motion to Compel response stated that it *still* refused to produce its insurance tower and would not produce a corporate representative for deposition with access to its computer system. (Doc. No. 79, PageID# 770.) As for Navisphere access, as Plaintiffs explained in their motion to compel, in another similar case Plaintiffs' counsel is handling, the court recently ordered CH Robinson to

produce the same Navisphere documents and required that the corporate representative have access to Navisphere during their deposition. (Doc. No. 66-5, Order, *Ortega v. C.H. Robinson*.) Given CH Robinson's discovery misconduct in this matter, the need for the corporate representative to have access to Navisphere is even more pronounced here.

As for Plaintiffs' second request for relief—the specific outstanding discovery deficiencies and documents—CH Robinson's February 2025 filing promised that it would supplement its Rule 26(a) disclosures and ***all*** its written discovery responses, which it never did. (*Id*. at PageID# 769.) More specifically, CH Robinson's discovery responses are still deficient in the following ways and Plaintiffs request the following supplements and corrections be made:

- **Plaintiffs' First Set of Interrogatories**:

    o **Interrogatory 2**: This request asked for people with knowledge of the issues pertaining to the suit. CH Robinson pointed Plaintiffs to its Rule 26 disclosures, which merely said a "Representative(s) of C.H. Robinson Worldwide, Inc." (Doc. No. 66-2, PageID# 583.) CH Robinson *still* has not identified the names and representatives of anyone who it believes to have knowledge of the claims and issues.

    o **Interrogatory 5**: This request asked that CH Robinson describe its relationship with the other named Defendants. Robinson responded that "at no time whatsoever did C.H. Robinson contract with or enter into any agreements or arrangements with Unique Freight Carriers, Inc. and Papi Briche, LLC." (*Id*. at PageID# 585.) Recently produced documents, however, show that Unique is an active carrier in CH Robinson's Navisphere system, yet CH Robinson has not supplemented this response.



    o **Interrogatory 6:** This request asked CH Robinson to describe its communications with all the other Defendants about the shipment in question. (*Id*.) CH Robinson objected and later produced communications with BLF that were cut-off on December 24, 2022. CH Robinson must supplement these communications from 8/1/2022 through the present and not unilaterally cut them off like they did the BLF load history.

- **Interrogatory 7:** This request asked for CH Robinson's contracts with the other Defendants. CH Robinson provided its contracts with BLF and Walmart but still not Unique, who it appears CH Robinson does indeed do business with. (*Id*.)

- **Interrogatory 8:** This request asked CH Robinson to define the phrase "transportation service provider" to which CH Robinson refused and never supplemented. (*Id*. at PageID# 585-586.)

- **Interrogatories 9 and 13:** These requests asked how many times in the 24 months before the crash CH Robinson engaged the services of Unique. CH Robinson said it never did business with Unique and never changed its answer. (*Id*. at PageID# 586.)

- **Interrogatory 12:** This request asked how many times in the 24 months before the crash Walmart hired CH Robinson to broker loads. CH Robinson refused to provide this information and never has. (*Id*. at PageID# 587.)

- **Interrogatory 16:** This request asked CH Robinson to identify all persons involved in brokering or arranging the shipment in question. CH Robinson responded with the name of an employee but still has not supplemented its response for the Indiana load. (*Id*. at PageID# 588.)

- **Interrogatory 18:** This request asked for the names of CH Robinson employees who qualified the other named Defendants or evaluated their fitness for business with CH Robinson. CH Robinson still has provided no employee names and said it never did business with Unique. (*Id*. at PageID# 589.)

- **Interrogatory 21:** This request asked if CH Robinson contended that Unique was a qualified and safe motor carrier. CH Robinson responded that it never did business with Unique and never supplemented. (*Id*. at PageID# 590.)

- **Plaintiffs' First RFPs:**

    - **RFP 2:** Requested a "copy of any document, manual, guidelines, pamphlet, or other material concerning your definition, understanding, and expectation of 'due diligence by a broker." (*Id*. at PageID# 592-593.) CH Robinson still has produced no documents and objected because such "information is irrelevant because the subject load was transported and delivered before the occurrence took place." (*Id*.)

    - **RFP 3:** Requested "Defendant C.H. Robinson's policy and procedure manuals for hiring, retaining, screening, and/or contracting with shippers, carriers, and/or drivers." (*Id*. at PageID# 593-594.) CH Robinson still has produced no documents and instead only provided a longwinded self-serving explanation about its selection of motor carriers. (*Id*.)

- **RFP 4**: Requested a "copy of any company handbook, policy manual, welcome packet or other guidelines concerning the transportation of loads, retention of commercial motor carriers, the qualification of commercial motor carriers and/or commercial drivers, and the brokerage of shipments created or distributed by C.H. Robinson in the past 5 years." CH Robinson objected because such "information is irrelevant because the subject load was transported and delivered before the occurrence took place." CH Robinson still has produced no documents and merely pointed Plaintiffs to its contract with BLF. (*Id*. at PageID# 594.)

- **RFP 5**: Requested CH Robinson's "Carrier Services Express HV Management Cargo Risk Management – High Value Cargo" document, or any other document outlining process and criteria for determining commercial motor carriers qualified to haul high value cargo." CH Robinson still has produced no documents and objected because such "information is irrelevant because the subject load was transported and delivered before the occurrence took place." (*Id*.)

- **RFP 6**: Requested a "copy of any application or inquiry and any associated materials submitted by any of the Defendants to become a qualified carrier or driver with you, including any credit applications." CH Robinson objected as such "information is irrelevant because the subject load was transported and delivered before the occurrence took place", claimed that it never did business with Unique, and merely directed Plaintiffs to a single contract between CH Robinson and BLF. (*Id*. at PageID# 594 595.) CH Robinson has never supplemented.

- **RFP 7**: Requested all correspondence or other communications that evidence any vetting, screening, or qualification process of any of the Defendants done by CH Robinson. CH Robinson objected as such "information is irrelevant because the subject load was transported and delivered before the occurrence took place," and claimed that it never did business with Unique. (*Id*. at PageID# 595-596.) CH Robinson eventually produced email communications with BLF, but those communications were unilaterally restricted from 8/31/2022 through 12/24/22. CH Robinson contracted with BLF on 8/23/2022. Plaintiffs request that Robinson produce all its communications with BLF extending from 8/1/2022 to the present.

- **RFP 9**: Requested a copy of any documents all other "documents and records not disclosed in other requests for production in this matter showing what, if any, background checks or investigation C.H. Robinson performed or had performed on any of the Defendants before contracting with them." CH Robinson objected as such "information is irrelevant because the subject load was transported and delivered before the occurrence took place," produced no documents, and instead provided a longwinded self-serving explanation about its selection of motor carriers. (*Id*. at PageID# 596-597.)

- **RFP 12**: Requested a complete copy of CH Robinson's Navisphere file for Unique. CH Robinson said it never did business with Unique. (*Id*. at PageID# 598-599.) We now know that CH Robinson has a Navisphere file for Unique based on one screenshot CH

5

- **RFPs 21 and 22**: Requested "C.H. Robinson Worldwide's standard operating procedure for centralized carrier services to input new motor carriers into Navisphere, MDM, RMIS, or whatever computer application was being used when C.H. Robinson Worldwide initially onboarded [BLF and Unique Freight Carriers, Inc]." CH Robinson objected as such "information is irrelevant because the subject load was transported and delivered before the occurrence took place" and said there were no documents. Plaintiffs know for a fact that these documents exist and demand CH Robinson produce them. (*Id*. at PageID# 601-602.)

- **RFP 26**: Requested a log of all shipments made by Unique through CH Robinson for the past 5 years. CH Robinson responded that objected as such "information is irrelevant because the subject load was transported and delivered before the occurrence took place," said it never did business with Unique, said there were no documents, and has never supplemented. (*Id*. at PageID# 602.)

- **RFP 34**: Requested a ledger of all payments made between CH Robinson and BLF. CH Robinson objected as such "information is irrelevant because the subject load was transported and delivered before the occurrence took place", never produced the payment ledger, and has never supplemented. (*Id*. at PageID# 606.)

- **RFP 37**: Requested all contracts between CH Robinson and Unique. CH Robinson objected as such "information is irrelevant because the subject load was transported and delivered before the occurrence took place", claimed that it never did business with Unique, and never supplemented. (*Id*. at PageID# 608.)

- **RFP 40**: Requested all correspondence between CH Robinson and the other Defendants. CH Robinson objected as such "information is irrelevant because the subject load was transported and delivered before the occurrence took place" and claimed that no communications existed. (*Id*. at PageID#609.) CH Robinson eventually supplemented communications with BLF from 8/31/22 to 12/24/22 but has not provided all the communications as requested. CH Robinson has all produced no other communications with Unique or any other Defendant.

- **RFP 44**: Requested CH Robinson's insurance tower. CH Robinson never provided this information and never supplemented. (*Id*. at PageID#610.)

- **RFP 57**: Requested all CH Robinson's communications whether internally or externally about the crash or the shipment. CH Robinson said there were none and still has produced none. (*Id*. at PageID# 613.)

- **RFP 58**: Requested BLF and Unique's entire load history. CH Robinson objected as such "information is irrelevant because the subject load was transported and delivered

Robinson later produced. CH Robinson must provide Unique's entire Navisphere file as requested.

before the occurrence took place", said it never did business with Unique, and then misrepresented that it was producing BLF's "load history." (*Id*. at PageID# 613-614.) CH Robinson has since supplemented BLF's full load history which shows it originally produced a unilaterally truncated version of BLF's load history. CH Robinson has never provided Unique's load history.

- **Plaintiffs' Second RFPs**

  o **RFP 1**: Requested an organizational chart of the executives, members, officers, directors, and management for C.H. Robinson at the time of the Crash, and at present time. CH Robinson objected as such "information is irrelevant because the subject load was transported and delivered before the occurrence took place", produced no documents, and never supplemented. (Doc. No. 66-8, PageID# 662.)

  o **RFPs 2-5**: Requested certain internal CH Robinson documents about company policies and procedures. CH Robinson objected as such "information is irrelevant because the subject load was transported and delivered before the occurrence took place", produced no documents, and never supplemented. (*Id*. at PageID# 662-664.)

  o **RFPs 6-26**: Requested all Navisphere screenshots related to BLF and the load. CH Robinson has supplemented with responsive documents, but Plaintiffs would like CH Robinson's corporate representative to have access during his or her deposition so Plaintiffs can verify as such.

- **Plaintiffs' Third RFPs**

  o **RFPs 1-50**: Requested copies of Navisphere documents related to the Navisphere file for Defendants Unique and Papi Briche. CH Robinson provided a Navisphere search the came up empty for Papi Briche, but one that triggered a hit for Unique. Despite this, CH Robison did not produce Unique's Navisphere file and never supplemented. Also, despite what it promised in its response to Plaintiff's supplement (Doc. No. 79, PageID# 769), CH Robinson never provided a search for Dayren Rocubert.

### III. <u>Conclusion</u>

In sum, Plaintiffs request that the Court grant their Motion to Compel and enter an order:

(1)   striking CH Robinson's objections to Plaintiffs' second and third sets of written discovery;

(2)   requiring CH Robinson to provide documents and supplement its previous discovery responses as outlined above;

(3)   requiring CH Robinson's corporate representative to have access to the Navisphere system during his/her upcoming deposition;

(4)  requiring CH Robinson to adhere to its Rule 26(a) disclosure obligations by producing the policies and declaration pages for its entire tower of insurance coverage; and

(5)  affording any other relief that the Court finds just and proper.

Respectfully submitted,

/s/ Jonathan N. Bond
Jonathan N. Bond (0096696)
Michael Jay Leizerman (0063945)
The Law Firm for Truck Safety, LLP
3232 Executive Parkway, Suite 106
Toledo, OH 43606
Phone: (800) 628-400
Fax: (888) 838-8828
jon@truckaccidents.com
michael@truckaccidents.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

  I certify that on July 28, 2025, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing and for transmission to all ECF registrants through the ECF System.

                Respectfully submitted,

                /s/ Jonathan N. Bond
                Jonathan N. Bond
                *Attorney for Plaintiffs*