# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### DAYTON DIVISION

| | |
|---|---|
| **MARY JOAN BOEHNE**, etc., et al., | Case No.: 3:23-cv-00158-MJN-CHG |
| Plaintiffs, | Judge Michael J. Newman<br>Magistrate Judge Caroline H. Gentry |
| v. | |
| **C.H. ROBINSON WORLDWIDE, INC., et al.,** | **PLAINTIFFS' MOTION TO COMPEL AND FOR SANCTIONS** |
| Defendants. | |

CH Robinson has concealed critical evidence, made repeated misrepresentations regarding its involvement in the fatal crash at issue, ignored multiple sets of written discovery, and refuses to produce its court-ordered corporate representative for deposition. And CH Robinson continues to disregard this Court's Order and its discovery obligations.

Thus, under Rule 37(a)-(d), Plaintiffs move for an order:

(1) finding CH Robinson in violation of the Court's Order (Doc No. 109);

(2) compelling immediate compliance with that Order, including production of all documents and a Rule 30(b)(6) witness with live access to the Navisphere system;

(3) holding that CH Robinson has waived all objections to Plaintiffs' eighth and ninth sets of requests for the production of documents; and

(4) compelling immediate production of all responsive documents to those requests.

Because CH Robinson's discovery misconduct has been willful, prolonged, and prejudicial, Plaintiffs also request sanctions. Under Rule 37(b), (c), and (d), Plaintiffs request that the Court: (a) strike CH Robinson's answer, (b) render CH Robinson in default of Plaintiffs' Complaint, and/or (c) designate as established for purposes of the action that CH Robinson is a motor carrier vicariously liable for truck driver Dayren Rocubert's negligence. Plaintiffs certify that they have attempted to confer with

1

CH Robinson in good faith and have exhausted their informal efforts of resolution.  Discovery closes on March 13, 2026, and Plaintiffs cannot wait any longer, hoping for cooperation that is not coming.

<div style="margin-left: 40%;">

Respectfully submitted,

/s/ Jonathan N. Bond
Jonathan N. Bond (0096696)
Michael Jay Leizerman (0063945)
Andrew R. Young (0071543)
The Law Firm for Truck Safety, LLP
3232 Executive Parkway, Suite 106
Toledo, OH 43606
Phone: (800) 628-400
Fax: (888) 838-8828
jon@truckaccidents.com
michael@truckaccidents.com
andy@truckaccidents.com
*Attorneys for Plaintiffs*

</div>

## **MEMORANDUM IN SUPPORT**

### A.     **Case Background**

On Christmas Eve 2022, trucker Dayren Rocubert failed to control his semi, crossed the median on I-75, struck two cars, and killed five members of one family on their way to celebrate Christmas: Jeremy Boehne (age 32), Karen Hahn Boehne (age 33), Karen's Unborn Baby Boy Boehne (age 6 ½ months), Lauren Hahn (age 32), and Kimberly Siegrist (age 63).  At the time of the crash, Rocubert was headed to Indiana to pick up a load that CH Robinson had sent to a trucking company called BLF. Rocubert was also high on cocaine and meth and driving without federally mandated operating authority and electronic driver logs.

### B.     **Procedural Background**

*i.     For over two years, CH Robinson repeatedly denied involvement with the Indiana Load.*

From the day of the crash until early February 2025, CH Robinson insisted that it could not be liable because Rocubert was not driving for it at the time of the crash, as he had dropped off his contracted

load hours earlier. CH Robinson repeatedly made this misrepresentation in filings to diminish Plaintiffs' claims to the Court, as a defense to liability, and as a shield to evade its discovery obligations. For instance, CH Robinson produced its initial disclosures months late and refused to produce its tower of insurance, claiming that its policies were not relevant and disproportional to the needs of the case. Plaintiffs moved to compel and prevailed. (9/30/2025 Order Granting Motion to Compel, Doc. No. 109.)

Moreover, Plaintiffs' initial discovery requests sought BLF's full load history with CH Robinson and countless other documents. (CHR Discovery Responses, Doc. No. 66-2, PageIDs 603 and 613.)[1] CH Robinson objected to 14 of 29 initial interrogatories and 54 of 58 document requests, claiming, "Such information is irrelevant because the subject load was transported and delivered before the occurrence took place." (*See* Doc. No. 66-2.) For the load history, CH Robinson initially produced a truncated spreadsheet showing loads that it sent BLF through December 22, 2022. (*See* Load History, Doc. No. 82-1.) The load history shows the load that Rocubert dropped off before the crash (Load 421489519 or the "Ohio Load") but omitted his Indiana load (Load 421253680 or the "Indiana Load"). *Id*.

Thereafter, CH Robinson ignored two sets of follow-up document requests, which sought load history and other information about BLF and the other Defendants. CH Robinson then refused to produce additional documents, objecting again to 108/112 requests stating, "Such information is irrelevant because the subject load was transported and delivered before the occurrence took place." (CHR Second and Third Responses, Doc. Nos. 66-8 and 66-9.)

After a failed discovery conference, the parties briefed a motion to compel. CH Robinson's filings hammered its misrepresentation that Rocubert was not driving for it at the time of the crash. (*See* Motion to Compel Opp., Doc. No. 68, PageID 711, 713.) CH Robinson even accused Plaintiffs of "absolute deception" while reiterating that Rocubert was not driving for it at the time of the crash:

---

[1] **RFP 27**: Produce a ledger, log, or record for all shipments made by Defendant BLF Truck Transportation, LLC or any other related or affiliated motor carrier through contract with CH Robinson for the past 5 years. **RFP 58**: A spreadsheet showing all BLF loads arranged by C.H. Robinson. (*Id*., PageID 613.)

3

Plaintiffs state that "what we really want is… the truth." [ECF #69, p. 4]. If that were indeed the case then Plaintiffs would never have filed their motion to compel. Plaintiffs possess documents showing the truth and have possessed those documents for some time now. The truth as established by those documents is that C.H. Robinson not only had zero involvement with the entities or individuals involved in the occurrence, but also that the load C.H. Robinson brokered was delivered at a completely different time and place than where the occurrence took place following the delivery of the brokered load. (CHR Surreply, Doc. No. 76, PageIDs 756-757.)

    ii.      *Early 2025—Plaintiffs learn from a third party of Robinson's involvement with the Indiana Load.*

In January 2025, Plaintiffs filed a Motion to Compel Supplement (Doc. No. 75) informing the Court that counsel for BLF confirmed that Rocubert was indeed on his way to pick up a CH Robinson load in Indiana at the time of the crash. (*Id*. at PageID 749.) On February 4, 2025, CH Robinson's counsel wrote Plaintiffs *finally* admitting to its involvement with the Indiana Load. (Letter, Doc. No. 79-1.) The letter claimed that the load was new information that Robinson uncovered by performing a "new search, different than prior searches undertaken by C.H. Robinson to attempt to identify all loads contracted with BLF for, both before (and after) the events giving rise to suit." (*Id*. at PageID 773.) The next day, CH Robinson disclosed this "new information" to the Court. (CHR Response, Doc. No. 79.)

    iii.      *September 2025—Court grants Plaintiffs' Motion to Compel and sets sanctions hearing.*

On September 30, 2025, the Court entered an Order granting Plaintiffs' Motion to Compel. (Doc. No. 109.) The Order overruled CH Robinson's objections to Plaintiffs' second and third discovery and required that CH Robinson: (1) produce requested documents, (2) produce its corporate representative for his 30(b)(6) deposition with immediate access to Robinson's system,[2] and (3) produce its entire insurance tower. (*Id*.) The Order also set a sanctions hearing, which Plaintiffs forewent at the time in the spirit of cooperation.

---

[2] The Order required that Robinson produce the corporate representative within 15 days, however, Plaintiffs agreed to wait until later in the case schedule. Now, Robinson will not produce a date within the case schedule.

  *iv.*    *December 2025—Plaintiffs depose CH Robinson employee Kelsie Evers and learn that CH Robinson "missed" the Indiana Load because of its manipulated extraction of BLF's load history.*

When CH Robinson first told the Court of the Indiana Load, it attached an affidavit from an employee named Kelsie Evers who swore under oath to the reasons CH Robinson initially failed to locate it. (Evers Aff., Doc. No. 79-3.) In December 2025, Plaintiffs deposed Evers and uncovered that CH Robinson failed to find the Indiana Load because Robinson unilaterally limited its initial load history searches in two ways. First, CH Robinson's original load history extraction purposefully excluded "bounced loads." (Ex. A, Evers Dep., 91-92.) Bounced loads are loads that CH Robinson initially assigned to one motor carrier, and then later replaced that carrier with another to haul the same load. (*Id.* at 4-13.) The Indiana Load was a bounced load—as is often the case when there has been a crash— because another carrier ultimately picked up and delivered the load on December 27, 2022. (*Id.* at 87.) In other words, by excluding bounced loads, CH Robinson's search methodology guaranteed that the Indiana Load would never appear in the results.

Second, even if it included bounced loads, CH Robinson's initial search *still* would not have caught the Indiana Load. That is because CH Robinson also unilaterally narrowed the time frame for the initial search. Although Plaintiffs requested BLF's entire load history, CH Robinson, without explanation, narrowed the initial load history to loads contracted to BLF through December 22, 2022, which was the day BLF agreed to transport the Ohio Load. (*See* Load History, Doc. No. 82-1 ("ActivityDate" Column is the date of tender and acceptance of the load and only runs through 12/22/22.).) CH Robinson's unilateral narrowing made it appear as though there was no Indiana Load and that CH Robinson sent (one-truck-one-driver) BLF for 494 loads from August 30, 2022, to December 22, 2022. (*See* Load History, Doc. No. 82-1.) The truth—which was only revealed after CH Robinson was caught—is that there **was** an Indiana Load and that CH Robinson sent (one truck-one-driver) BLF for 942 loads from August 30, 2022, to March 4, 2023. (*See* Ex. B, BLF Full Load History.)

<div align="center">5</div>

Evers could offer no coherent explanation for why she narrowed the initial load history searches, and CH Robinson still refuses to produce the email that provides context for these extractions. Evers testified that to obtain the history, she emailed a request to CH Robinson employee Brian Haze. (Ex. A, Evers Dep., 9:24-10:18.) Evers told Haze that the load history should *not* exclude bounced loads:

Q. You specifically told him not to include bounced loads?

A. Correct.

Q. And why?

A. Generally, when we are looking for load history, we're wanting to see just how many loads the company, actually, completed.

Q. But here there was a crash, right, that was argued to have interrupted a load; fair?

A. Yes.

Q. So did you -- why did you ask him, then, to not include bounced loads?

A. Because that is what I had been told to look for when we pull a load history for any carrier is to not include bounced loads. (*Id.* at 91:22-92:11.)

Evers' deposition raised even more questions about the veracity of her sworn Affidavit. (Doc. No. 79-3.). As shown in the table below, what Evers' Affidavit described as a load missing from BLF's "motor carrier file" turned out to be nothing more than her own narrowing of the load history.

| Evers Affidavit | Evers Deposition |
|---|---|
| "Upon notice of the occurrence giving rise to this claim, C.H. Robinson Company reviewed their corporate and business records in February 2023 and July 2023 to determine the identity of the motor carrier that delivered a load to a Wal-Mart distribution center in Washington Courthouse, Ohio on December 24, 2022. That motor carrier was identified as BLF Truck Transportation Inc. (MC # 1453317)." (Doc. No. 79-3, ¶ 2.) | Evers requested a load history for BLF that was narrowed by timeframe and excluded bounced loads. (Ex. A, Evers Dep. at 82-83.) |
| "C.H. Robinson Company's motor carrier file for BLF Truck Transportation Inc. did not show that BLF Truck Transportation Inc. received a C.H. Robinson Company brokered load from Bryant, | In actuality, there is no "motor carrier file." (Ex. A, Evers Dep. at 84:19-22.) What Evers is referring to is the load history spreadsheet that did not show the Indiana Load because she |

| | |
|---|---|
| Indiana on or after December 24, 2022." (Doc. No. 79-3, ¶ 3.) | unilaterally narrowed the extraction. (Ex. A, Evers Dep. at 84:4-18.) |
| C.H. Robinson Company also in February 2023 and July 2023 reviewed the file for load # 421489519 which is the load that BLF Truck Transportation Inc. transported from Miami, Florida to Washington Courthouse, Ohio that was delivered on December 24, 2022. That load file showed the load was delivered to a Wal-Mart distribution center in Washington Courthouse, Ohio at 5:44 a.m. on December 24, 2022. No further activity was shown subsequent to delivery of that load." (Doc. No. 79-3, ¶ 4.) | In actuality, Evers reviewed the same spreadsheet, which showed no further activity by her own doing. (Ex. A, Evers Dep. at 84:23-85:19.) |
| "The initial review of corporate and business records of C.H. Robinson Company failed to suggest that BLF Truck Transportation Inc. was traveling with an empty trailer to Indiana on December 24, 2022." (Doc. No. 79-3, ¶ 5.) | Evers is again talking about her review of the same spreadsheet, which failed to catch the Indiana Load by Robinson's own doing. (Ex. A, Evers Dep. at 86:2-7.) |
| "Further initial review of BLF Truck Transportation's motor carrier file did not show that any loads bounced on December 24, 2022." (Doc. No. 79-3, ¶ 6.) | In actuality, there is no "motor carrier file." (Ex. A, Evers Dep. at 84:19-22.) Evers is talking about the same truncated spreadsheet. (Ex. A, Evers Dep. at 84-86.) |
| In February 2025, CH Robinson conducted a new search that revealed the Indiana Load. (Doc. No. 79-3, ¶¶ 7-9.) | Because CH Robinson finally asked for a complete load history. (Ex. A, Evers Dep. at 86-87.) |
| "The initial file review involving BLF Truck Transportation Inc. and the load delivered to Washington Courthouse, Ohio on December 24, 2022 did not state that BLF Truck Transportation Inc. cancelled the load to be picked up in Bryant, Indiana. That information was first learned upon review of the file for load # 421253680 on February 3, 2025." (Doc. No. 79-3, ¶ 11.) | Evers admits that this statement is not quite accurate because the initial search did not pick up the Indiana Load at all, let alone the cancellation. (Ex. A, Evers Dep. at 89:15-21.) The initial review did not uncover the Indiana Load because Robinson narrowed the load history. (Ex. A, Evers Dep. at 84-89.) |
| "The information learned on February 3, 2025 by C.H. Robinson Company would not have been revealed in their initial searches because those searches were confined to the load delivered to Washington Courthouse, Ohio on December 24, 2022, and motor carriers BLF Truck Transportation Inc., Unique Freight Carrier, Inc., and Papi Briche, LLC." (Doc. No. 79-3, ¶ 12.) | False. The initial searches did not omit the Indiana Load because CH Robinson confined its search to BLF. The searches omitted the Indiana Load because *Robinson* confined BLF's loads. (Ex. A, Evers Dep. at 89:23-92:14.) |
| "The information learned on February 3, 2025 was not reflected in the information reviewed in February 2023 and July 2023 because BLF Truck Transportation Inc. cancelled pick up of the load in Bryant, Indiana on December 24, 2022." (Doc. No. 79-3, ¶ 13.) | False. The searches omitted the Indiana Load because *Robinson* narrowed the searches BLF's loads. (Ex. A, Evers Dep. at 89:23-92:14.) |

Evers' Affidavit and CH Robinson's about-face are disingenuous. CH Robinson narrowed evidence in self-serving a way. But for plaintiff's efforts pursuing this information through a third party, CH Robinson would have gotten away with it.

>   *v.* *CH Robinson continues to refuse to provide Evers' emails, and has ignored two sets of document requests, and repeated requests for dates for the Court-ordered deposition of its corporate representative.*

Following Evers' deposition, CH Robinson's discovery misconduct has continued to the present. For instance, CH Robinson has ignored two more sets of written discovery. (See Exs. C and D, Plaintiffs' Eighth and Ninth RFPs.) The served discovery includes requests that CH Robinson should have produced in response to Plaintiffs' Second RFPs, which are subject to this Court's Discovery Order (Doc. No. 109):

| Plaintiffs' Eighth and Ninth RFPs | Covered By Plaintiffs Second RFPs |
|---|---|
| **RFP 1**: Provide all bills of lading, trailer control records, lumpers, invoices, and proofs of delivery in CHR's system for the Bryant, Indiana load (421253680). (Ex. C at RFP 1.)<br><br>**RFP 21**: Provide all tracking logs, inbound tracking logs, shipment tracking logs, and/or GPS tracking (whether AI or otherwise) related to Loads: 421489519 and 421253680. (Ex. C at RFP 21.)<br><br>**RFP 22**: Provide all tracking information found in Kafka, Vision, and/or Navisphere for Loads: 421489519 and 421253680. (Ex. C at RFP 22.) | **RFP 26:** Provide all documents, not provided in response to a previous request, referenced in any tab, subtab, or menu items in the Navisphere Party Editor for BLF Transportation, LLC or Load Editor for the Load. (Second RFP, Doc. No. 66-3, PageID 621.)<br><br>**RFP 36**: Produce all bills of lading and/or invoices for the Load. (Doc. No. 66-3, PageID 623.)<br><br>**RFP 46**: A copy of any dispatch logs, trip packets, manifests, materials, instructions, documents and other communication or information provided to any of the Defendants regarding the shipment in question. (Doc. No. 66-3, PageID 624.) |
| **RFP 4**: Provide all tickets (see Collins Dep. p. 37) for ADA, JDA, JAJ, Josh & Jaz, BLF, Nes Line Trucking Corp, and all other motor carriers that Thoni Huembes was assigned as the salesperson for during his time at CHR. (Ex. C at RFP 4.) | **RFP 47**: A copy of any comments, praise, complaints, or communications regarding any Defendant received by C.H. Robinson or that C.H. Robinson is aware of. (Doc. No. 66-3, PageID 624.)<br><br>**RFP 33**: Please produce a complete copy of any file which has not otherwise been produced, that you possess for Defendants BLF Transportation, |

8

| | |
|---|---|
| | LLC or Dayren Rocubert. (Doc. No. 66-3, PageID 622.) |
| | **RFP 58:** A copy of any document relating to any motor carrier that was the predecessor, successor, affiliated with, or had common or overlapping ownership with BLF Transportation, LLC. (Doc. No. 66-3, PageID 626.) |
| **RFP 5**: Provide all emails between Kelsie Evers and Brian Haze (and/or any other CHR employee) related to BLF's load history. (Ex. C at RFP 5.)<br><br>**RFP 6**: Provide all text messages between Ismael Aguirre and Alexander Delgado. (Ex. C at RFP 6.)<br><br>**RFP 7**: Provide all text messages between Ismael Aguirre and any person associated with ADA, JDA, JAJ, Josh & Jaz, BLF, and/or Nes Line Trucking Corp. (Ex. C at RFP 7.)<br><br>**RFP 8**: Produce all text messages (and/or messages sent on messaging applications), call recordings, and/or voicemails between CH Robinson employees and ADA, JDA, JAJ, Josh & Jaz, BLF, and/or Nes Line Trucking Corp. (Ex. C at RFP 8.)<br><br>**RFP 9**: Provide a PST file with all email communications between CH Robinson and Josh & Jaz Trucking Corp. (Ex. C at RFP 9.)<br><br>**RFP 10**: Provide a PST file with all email communications between CH Robinson and Nes Line Trucking Corp. (Ex. C at RFP 10.) | **RFP 45:** A copy of any correspondence between you and any of the Defendants concerning the business relationship between you, including, but not limited to, the shipment in question. (Doc. No. 66-3, PageID 624.)<br><br>**RFP 28**: All correspondence or other communication (written or electronic) that evidence any vetting, screening, or qualification process of any of the Defendants done by C.H. Robinson. (Doc. No. 66-3, PageID 622.)<br><br>**RFP 58:** A copy of any document relating to any motor carrier that was the predecessor, successor, affiliated with, or had common or overlapping ownership with BLF Transportation, LLC. (Doc. No. 66-3, PageID 626.) |
| **RFP 11**: Provide Navisphere screenshots for Nes Line Trucking Corp. (Ex. C at RFP 11.)<br><br>**RFP 12**: Provide Navisphere audits for Josh & Jaz Trucking Corp and Nes Line Trucking Corp. (Ex. C at RFP 12.)<br><br>**RFP 13**: Provide a payment history for ADA, JDA, JAJ, Josh & Jaz, and Nes Line Trucking Corp. (Ex. C at RFP 13.) | **RFP 58:** A copy of any document relating to any motor carrier that was the predecessor, successor, affiliated with, or had common or overlapping ownership with BLF Transportation, LLC. (Doc. No. 66-3, PageID 626.)<br><br>**RFP 35:** Produce a ledger, log, or record for all shipments made by Defendant BLF Transportation, LLC or any other related or affiliated motor carrier through contract with C.H. Robinson for the past 5 years. (Doc. No. 66-3, PageID 623.) |

CH Robinson has also ignored repeated pleas for the deposition of its corporate representative, as well as for responses and documents in response to the Plaintiffs' eighth and ninth sets of discovery. (Ex. E, Emails Re Discovery.) Discovery ends March 13, 2026, and Plaintiffs need the documents and deposition immediately.

### C.      Law and Argument

*i.        CH Robinson's serious discovery misconduct warrants an equally serious sanction.*

Federal Rule of Civil Procedure 37(b)(2) "allows district judges to sanction discovery abusers."[3] Under 37(A), when a party disobeys a discovery order, a judge "holds a variety of sanctions in his arsenal, the most severe of which is the power to issue a default judgment."[4] Judges enjoy the same lethal sanctions arsenal when a party fails to designate a corporate representative or as when a party fails to respond to Rule 34 document requests.[5] "Discovery abusers must be sanctioned, because 'without adequate sanctions, the procedures for discovery would be ineffectual.'"[6] Sanctions, whether involving default or not, are reviewed for an abuse of discretion.[7]

Default sanctions for a failure to cooperate in discovery are a sanction of last resort that may be imposed only if the court concludes that a party's failure is due to willfulness, bad faith, or fault.[8] Courts also consider "whether the adversary was prejudiced by the dismissed or defaulting party's failure to cooperate in discovery, whether the dismissed or defaulting party was warned that failure to cooperate could lead to dismissal or default, and whether less drastic sanctions were imposed or considered before dismissal or default was ordered."[9]

---

[3] *Grange Mut. Cas. Co. v. Mack*, 270 F. App'x 372, 376 (6th Cir. 2008).
[4] *Id.*
[5] Fed.R.Civ.P. 37(d)(3).
[6] Grange at 378 (quoting 8A Wright, Miller & Marcus, *Federal Practice and Procedure* § 2281 (2d ed. 1994).
[7] *Bank One of Cleveland, N.A. v. Abbe*, 916 F.2d 1067, 1073 (6th Cir. 1990).
[8] *Id.*
[9] *Id.*

Here, there can be little question that CH Robinson willfully thwarted discovery in bad faith. CH Robinson deliberately manipulated evidence to make it look like it was unaware of and not responsible for the Indiana Load. CH Robinson then used its manipulated documents to accuse Plaintiffs of deception, to evade discovery, and to lodge countless frivolous objections. Worse yet, after it was caught, CH Robinson did not accept responsibility. Instead, it submitted an affidavit from an employee who tap danced around CH Robinson's manipulation of evidence. This is now the seventh (two motions to compel, reply, and three supplements) discovery misconduct filing Plaintiffs have lodged against CH Robinson. CH Robinson *continues to* violate this Court's order and to ignore Plaintiffs' requests and communications.

The other default factors also weigh in Plaintiffs' favor. First, CH Robinson's conduct prejudiced Plaintiffs. CH Robinson's obstructionism ground this case to a nearly two-year halt. "Courts have previously found prejudice sufficient to uphold default judgments when the obstructing party had wasted far less of the court's and the opposing litigant's time."[10] CH Robinson's obstruction also drained significant time and expenses from the Plaintiffs.[11]

Second, a less drastic sanction will not suffice. As in *Grange*, attorney fees and expenses will not fairly compensate Plaintiffs.[12] And while Plaintiffs were able to obtain the needed information from a third party, CH Robinson's obstruction prevented them from accessing the most key evidence in the case for 20 months. Courts sitting in the Sixth Circuit hold that, where obstruction prevents access to evidence, "default is most likely to be the appropriate sanction."[13] While the Court has not yet expressly warned CH Robinson of the possibility that it might impose a default judgment, CH Robinson can hardly

---

[10] *Grange* at 377 (discovery halted for two years) (citing *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 368 (6th Cir.1997) (discovery requests ignored for less than a year) and *Wanderer v. Johnston,* 910 F.2d 652, 654–55 (9th Cir.1990) (defendants obstructed discovery for eighteen months).

[11] *See Grange* at 377 (Plaintiffs were prejudiced having to waste significant time and money dealing with discovery abuses.)

[12] *Id.*

[13] *Id*. at 378 (citing *Regional Refuse Sys., Inc. v. Inland Reclamation Co*., 842 F.2d 150, 155 (6th Cir.1988).)

claim unfair surprise given its conduct and the plain text of the sanctions permitted under Rule 37. As in *Grange*, the Court should enter a default both to punish CH Robinson for its egregious discovery conduct and to deter other litigants who might be tempted to make a mockery of the discovery process.[14]

Left unchecked, CH Robinson will not stop its routine practice of flouting discovery. In Plaintiffs' counsel's case in Georgia, *Estelle v. CH Robinson*, Case No. 23-C-07003-SI (Order attached as Ex. F), the court recently awarded a default judgment against CH Robinson as a sanction for less egregious discovery misconduct than what is involved here. There, CH Robinson lied about whether it possessed tracking information about the load at issue. Here, on the other hand, CH Robinson has actually manipulated evidence and denied complete involvement with the load at issue. The *Estelle* court found that CH Robinson "willfully, and repeatedly, disregarded their discovery obligations and this Court's orders and instructions, and made overt misrepresentations to the Court." (Ex. F at 1.) The same is true here and then some.

>    ii.     *Regardless of sanctions, C.H. Robinson needs to immediately produce its corporate representative and the outstanding documents.*

CH Robinson's failure to provide documents and dates for its corporate representative violates this Court's Order. (Doc. No. 109.) Robinson's complete disregard of Plaintiffs' eighth and ninth document requests also violates Rule 37(d). "There is an abundance of case law holding that the failure to respond in a timely fashion to written discovery requests constitutes a waiver of any objections to providing the discovery, even objections based upon the attorney-client or work product privilege."[15] Whether "the untimely objection turns out to be legitimate and, thus, would have been sustained if it had been timely raised, is of little or no consequence."[16] "The rule that objections are waived by an untimely response

---

[14] *Grange* at 378.

[15] *United States ex rel. Doyle v. Diversified Collection Servs., Inc.*, No. 2:04-CV-0053, 2006 WL 8442133, at *2 (S.D. Ohio Mar. 29, 2006).

[16] *Id.*, (quoting *Cleveland Indians Baseball Co. v. United States*, 1998 WL 180623, *4 (N.D. Ohio 1998), citing *Davis v. Romney*, 53 F.R.D. 247, 248 (E.D. Pa. 1971)).

applies with equal force to all objections[.]"[17]  While a court may examine the circumstances of each case where a waiver is claimed, "when the defendant 'does not attempt to excuse, or even explain, its delay in responding to plaintiffs' discovery requests,' a finding of waiver is appropriate."[18]

CH Robinson ignored Plaintiffs' eighth and ninth sets of document requests.  Thus, C.H. Robinson has waived its objections and must produce all the requested documents immediately.  To hold otherwise would "completely frustrate the time limits contained in the Federal Rules and give a license to litigants to ignore the time limits for discovery without any adverse consequences."[19]

### D.    Conclusion

CH Robinson has manipulated evidence, violated court orders, made countless misrepresentations, ignored multiple sets of written discovery, and *still* refuses to provide dates for its Court-ordered corporate representative deposition.  CH Robinson must produce its corporate representative and the outstanding documents immediately, and this Court should exercise its discretion in favor of an extreme sanction.

> Respectfully submitted,
>
> /s/ Jonathan N. Bond
> Jonathan N. Bond (0096696)
> Michael Jay Leizerman (0063945)
> Andrew R. Young (0071543)
> The Law Firm for Truck Safety, LLP
> 3232 Executive Parkway, Suite 106
> Toledo, OH 43606
> Phone: (800) 628-400
> Fax: (888) 838-8828
> jon@truckaccidents.com
> michael@truckaccidents.com
> andy@truckaccidents.com
> *Attorneys for Plaintiffs*

---

[17] *Doyle* at *2, (citing *Peat Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir. 1984)).
[18] *Doyle* at *2, (quoting *Carfagno v. Jackson National Life Insurance Co.*, 2001 WL 34059032, *1 (W.D. Mich. 2001)).
[19] *Doyle* at *2, (quoting *Krewson v. City of Quincy*, 120 F.R.D. 6, 7 (D. Mass. 1988)).

## CERTIFICATE OF SERVICE

I certify that on March 9, 2026, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing and for transmission to all ECF registrants through the ECF System.

Respectfully submitted,

/s/ Jonathan N. Bond
Jonathan N. Bond
*Attorney for Plaintiffs*