## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO, DAYTON DIVISION

| | |
|---|---|
| MARY JOAN BOEHNE, et al., | Case No.: 3:23-cv-00158-MJN-CHG |
| Plaintiffs, | **C.H. ROBINSON'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL AND FOR SANCTIONS** |
| v. | |
| C.H. ROBINSON WORLDWIDE, INC., et al., | Judge Michael J. Newman |
| Defendants. | Magistrate Judge Caroline H. Gentry |

C.H. Robinson Worldwide, Inc. ("C.H. Robinson") respectfully asks the Court to deny Plaintiffs' Motion to Compel and for Sanctions because it is unsupported by law or fact.

## INTRODUCTION

C.H. Robinson is a federally licensed freight broker (license #2226453). Its business is to arrange for the transportation of goods for its customers by contracting with motor carriers to haul loads of freight. In December 2022, C.H. Robinson arranged for the licensed motor carrier BLF Truck Transportation Inc. ("BLF") to haul a load of flowers from Miami, Florida to Washington Court House, Ohio (the "Ohio Load"). Unbeknownst to C.H. Robinson, BLF subcontracted this load to truck driver Dayren Rocubert, who successfully delivered the Ohio Load to its destination on the morning of December 24, 2022.

C.H. Robinson also contracted with BLF to haul a separate, intrastate load of eggs from Bryant, Indiana to Auburn, Indiana (the "Indiana Load"). Unbeknownst to C.H. Robinson, BLF also subcontracted this load to Rocubert. After Rocubert delivered the Ohio Load, he was allegedly on his way to pick up the Indiana Load when his empty tractor-trailer collided with Plaintiffs' two vehicles on Interstate 75 near Franklin Township, Ohio. Four adults and one unborn child died in the collision.

1

Even though Rocubert was not hauling a load of freight brokered by C.H. Robinson at the time of the accident, Plaintiffs filed suit against C.H. Robinson in 2023. Since that time, C.H. Robinson has litigated this case in good faith, including by responding to Plaintiffs' voluminous discovery requests. As of the date hereof, C.H. Robinson has responded to nearly 300 requests for production from Plaintiffs. C.H. Robinson has also answered interrogatories and requests for admissions, produced seven witnesses for depositions, provided expert reports, engaged in motion practice, held meet-and-confer calls, and otherwise actively participated in the lawsuit.

Nonetheless, in their instant motion, Plaintiffs now seek the extraordinary remedy of striking C.H. Robinson's answer and holding it automatically liable for the deaths of the five decedents—all because of alleged discovery violations. Such draconian relief is neither permitted under applicable case law nor warranted under the circumstances of this case.

*First*, Plaintiffs contend C.H. Robinson failed to respond to their 8th and 9th sets of requests for production, which seek a broad array of documents unrelated to either the Ohio Load or the Indiana Load. C.H. Robinson acknowledges that it did not provide responses to these requests within the 30-day time limit. However, its delay was not bad faith; rather, the undersigned, as counsel for C.H. Robinson ("Wilson Elser"), inadvertently failed to timely supply the requests to C.H. Robinson. When Plaintiffs filed this motion—without satisfying the meet and confer requirements in this Court's Local Rules or Standing Order—Wilson Elser realized its unintentional error and immediately conferred with C.H. Robinson on responsive documentation.

C.H. Robinson then worked diligently to provide Wilson Elser with responsive documents, and C.H. Robinson has now provided to Plaintiffs both written responses and supplemental document productions for the 8th and 9th sets of requests. The undersigned has also advised Plaintiffs' counsel that Wilson Elser will work to resolve any outstanding questions regarding these

2

recent discovery responses. Thus, there is no evidence of willfulness or bad faith on the part of C.H. Robinson, and there is no prejudice to Plaintiffs in the minor production delay.

*Second*, Plaintiffs attempt to relitigate in their present motion a prior discovery issue regarding the Indiana Load that was already fully briefed and resolved before this Court. As the Court is aware from adjudicating this issue previously, C.H. Robinson did not discover the Indiana Load in its original investigation because BLF did not haul this load. Although the Indiana Load was originally brokered to BLF, that transaction was cancelled, and the Indiana Load was instead transported by a completely different motor carrier unaffiliated with this litigation. As a result, the Indiana Load did not show up in C.H. Robinson's original searches of the load history for BLF. After learning additional information in discovery about a potential load in Indiana, C.H. Robinson conducted new searches of its corporate records and discovered the Indiana Load for the first time. C.H. Robinson then promptly disclosed the Indiana Load, updated its discovery responses, and took all necessary steps to correct the record.

This entire issue was fully disclosed by C.H. Robinson to both counsel and this Court over one year ago; Plaintiffs' prior motion on this issue was already resolved approximately five months ago; and Plaintiffs have now conducted discovery into the Indiana Load. Thus, there is no basis for Plaintiffs to continue trying to punish C.H. Robinson over the initial, inadvertent failure to find the Indiana Load. For avoidance of any doubt, if ordered, C.H. Robinson stands ready and willing to provide the Court for *in camera* review the privileged attorney-client communications showing how C.H. Robinson conducted the searches in question and ultimately discovered the Indiana Load, so that this Court can see there was no bad faith and bury this issue once and for all.

*Third*, Plaintiffs claim C.H. Robinson has refused to provide its corporate representative for a deposition. Not so. C.H. Robinson has never stated that it will not produce a corporate

3

representative. To the contrary, the parties' counsel have conferred about the timing of the Rule 30(b)(6) deposition of C.H. Robinson at various points throughout this case, and the deposition is now set to occur in two parts on April 15 and April 22, dates proposed by Plaintiffs.

Once again, Plaintiffs have not shown bad faith by C.H. Robinson or that they have suffered undue prejudice. Neither exists. Plaintiffs have already deposed 7 C.H. Robinson witnesses. C.H. Robinson has also produced 7853 pages of documents and responded to all of Plaintiffs' written discovery requests. Plaintiffs also have pending a motion for leave to amend their pleading to add new theories of liability, new factual allegations, and new causes of action against C.H. Robinson, which, if granted, will necessitate an extension of the case schedule. For its part, C.H. Robinson has pending a motion to stay this case pending a ruling from the U.S. Supreme Court in *Montgomery v. Caribe Transport*, which could be dispositive of Plaintiffs' claims. And the Court has set this matter for a status conference on April 8, 2026. Thus, given all the moving pieces in this case, it is inappropriate to sanction C.H. Robinson due to an alleged delay in scheduling the Rule 30(b)(6) deposition.

For all of those reasons, C.H. Robinson asks the Court to deny Plaintiffs' motion.

## BACKGROUND

**A.      Plaintiffs already litigated—and the Court resolved—the issue with the Indiana Load.**

Plaintiffs filed suit on June 12, 2023. When C.H. Robinson initially investigated Plaintiffs' allegations, it discovered and disclosed the Ohio Load. As stated in the February 5, 2025 affidavit of C.H. Robinson employee Kelsie Evers, C.H. Robinson's initial review of corporate and business records did not reveal any information suggesting BLF was traveling with an empty trailer to Indiana on December 24, 2022. None of the records reviewed led C.H. Robinson to conclude anything other than that the Ohio Load had been delivered to Walmart on December 24, 2022, and

4

the driver was not *en route* to Indiana to pick up another load for C.H. Robinson when the accident occurred. *See* Exhibit 1, Affidavit of Geoffrey A. Belzer at Exhibit A; *see also* ECF 79-2.

Subsequently, C.H. Robinson, via counsel, further investigated Plaintiffs' allegations of a second load brokered to BLF by reaching out directly to BLF (the entity that C.H. Robinson had contracted with) through a letter which asked BLF about its knowledge of the occurrence. *See* Exhibit 1 at Exhibit B. BLF did not respond to the inquiry. *Id.* Further, the driver involved in the occurrence, Dayren Rocubert, invoked his Fifth Amendment privilege at his deposition on December 21, 2023 and would not answer substantive questions relating to the occurrence. *See* Exhibit 2, Excerpts of Deposition of Dayren Rocubert Ramos at p. 29-32.

On or about January 22, 2025, Plaintiffs informed C.H. Robinson of their contact with Hoss Hernandez, an attorney representing BLF and/or its principal, Alexander Delgado. *See* Exhibit 1. See also ECF No. 75. C.H. Robinson had no prior knowledge of Mr. Hernandez, but upon learning of his involvement, C.H. Robinson's counsel attempted to contact Mr. Hernandez via email and telephone but never received a return call or written response. *See* Exhibit 1.

On February 3, 2025, C.H. Robinson ran a new search of its corporate records and discovered for the first time that BLF had been scheduled to pick up a load in Bryant, Indiana on the date of the occurrence (*see* Exhibit 1, ECF 79-1) but that BLF had canceled the scheduled load on the date of the events giving rise to this suit (*id.* at Exhibit C; *see also* ECF 79-1). C.H. Robinson immediately informed Plaintiffs of this conclusion and provided complete documents regarding the load to Plaintiffs. *Id.* C.H. Robinson then informed the Court of what occurred, providing a narrative accompanied by a supporting affidavit.[1] *See* ECF Doc. 79.

---

[1] As explained therein, the Indiana Load did not show up in the original searches because BLF never picked up the Indiana Load—BLF cancelled this load, so it "bounced" in C.H. Robinson's system.

5

All of the above was fully discussed and disclosed with the Court in the course of briefing Plaintiffs' previous Motion to Compel, most particularly ECF Docs. 75, 79, 84 and 85. Ultimately, this Court issued an Order on September 30, 2025, granting Plaintiffs' Motion to Compel in part and directing that C.H. Robinson, *inter alia*, produce additional documents and supplement its previous discovery responses. The Court stated that it "expects and anticipates that this order shall be fully complied with in its entirety," but set a hearing for October 23, 2025 in a "significant abundance of caution." *See* ECF Doc. 109.

C.H. Robinson complied with the Court's September 30, 2025 order—communicating with Plaintiffs' counsel throughout the process to assure that Plaintiffs received everything they requested—and then filed a Notice of Compliance with the Court. *See* ECF Doc. 112. The docket reflects that Plaintiffs did not object or otherwise respond to the Notice of Compliance.

On October 22, 2025, C.H. Robinson filed an unopposed Motion to Vacate the Sanctions hearing, attaching Plaintiffs' email confirmation that they believed no sanctions hearing was necessary. *See* ECF Doc. 113 and 113-1. On October 23, 2025, the Court entered an Order granting the Motion to Vacate the hearing for good cause shown. *See* ECF 113-1.

**B.      C.H. Robinson has continued to engage in discovery and other litigation efforts.**

So far, Plaintiffs have deposed 7 C.H. Robinson witnesses. On January 5, 2026, Plaintiffs also took the deposition of Alexander Delgado as authorized representative of BLF. Plaintiffs also took the depositions of 7 non-party witnesses and a C.H. Robinson employee February 20-27, 2026. C.H. Robinson took the depositions of Plaintiffs' representatives on March 16-17, 2026.

Plaintiffs produced 6 expert reports on January 12, 2026. *See* Exhibit 1. C.H. Robinson produced its two expert reports on March 16, 2026. No expert depositions have been scheduled.

6

Plaintiffs propounded their 8th set of requests for production to C.H. Robinson on January 13, 2026 and their 9th set on January 27, 2026. Prior to serving those requests, Plaintiffs had already propounded 244 requests for production to C.H. Robinson, to which C.H. Robinson had responded in good faith. So, including those requests set forth in the 8th and 9th sets, Plaintiffs have now propounded – and C.H. Robinson has answered -- 291 individual requests for production to C.H. Robinson, in addition to 29 interrogatories and 9 requests for admission.[2]

As specified in Exhibit 1, Wilson Elser inadvertently did not forward the 8th set of requests for production to C.H. Robinson at the time it was propounded, and C.H. Robinson only received the 8th set after Plaintiffs filed their Motion to Compel. *See* Exhibit 1.

C.H. Robinson received the 9th set of requests for production, but, given the extraordinary breadth of these requests, C.H. Robinson had difficulty finding responsive documents, and its counsel discussed this issue with Plaintiffs' counsel on February 23, 2026.[3] *See* Exhibit 1.

On March 9, 2026, Plaintiffs filed their Motion to Compel and for Sanctions, erroneously asserting—without any basis in fact—that C.H. Robinson "has concealed critical evidence, made repeated misrepresentations regarding its involvement in the fatal crash at issue, ignored multiple sets of written discovery and refuses to produce its court-ordered corporate representative for deposition." ECF Doc. 123. In their motion, Plaintiffs seek to strike C.H. Robinson's answer and render C.H. Robinson liable for the alleged negligence of Rocubert—who is not an employee or independent contractor of C.H. Robinson. *See id.* Plaintiffs did not schedule a call or videoconference with C.H. Robinson's counsel before filing the Motion. *See* Exhibit 1.[4]

---

[2] Plaintiffs' 1st Set of Requests for Production contained 58 requests, the 2nd Set contained 62 requests, the 3rd Set contained 50 requests, the 4th Set contained 12 requests, the 5th Set contained 51 requests, the 6th Set contained 2 requests, the 7th Set contained 9 requests, the 8th Set contained 22 requests, and the 9th Set contained 25 requests.

[3] Many of Plaintiffs' recent discovery requests go to matters set forth in Plaintiffs' proposed amended pleading, which is not even operative, as the Court has not yet granted Plaintiffs leave to file this amended complaint.

[4] Lead counsel for the parties discussed the Motion in-person on February 16, 2025, one week after the Motion was filed.  See Exhibit 1.

7

Within a week of receiving the Motion, C.H. Robinson provided written responses and documents in response to Plaintiffs' 8th set of requests for production on March 13, 2026. C.H. Robinson then provided supplements to its responses to the 8th set on March 18, 2026. *Id.*

On March 14, 2026, C.H. Robinson informed Plaintiffs that it would produce witnesses requested by Plaintiffs as soon as Plaintiffs were ready to conduct such depositions, and those depositions have now been scheduled for mid-April. *See* Exhibit 1.

On March 20, 2026 C.H. Robinson produced its written responses and documents in response to Plaintiffs' 9th set of requests for production of documents. *See* Exhibit 1. C.H. Robinson then completed a supplemental production on March 28, 2026. *Id*. This matter is set for a status conference on April 8, 2026.  See Docket.

## ARGUMENT

### A.        Defaulting a party as a discovery sanction is not favored.

The Sixth Circuit has observed that "judgment by default is a drastic step which should be resorted to only in the most extreme cases." *Prime Rate Premium Finance Corporation v. Larson,* 930 F. 3d 759, 769 (6th Cir. 2019). *See also Trustees of the Detroit Carpenters Fringe Benefit Funds v. Manninen*, 1994 U.S. App. LEXIS 1387, *5 (6th Cir. Jan. 24, 1994) (citation omitted). "Entry of a default judgment against a party for failure to cooperate in discovery is a sanction of last resort and may not be imposed unless non-compliance was due to willfulness, bad faith or fault." *Thurmond v. County of Wayne*, 447 Fed Appx. 643, 647 (6th Cir.  2011) (citation omitted).

"Trials on the merits are favored in federal courts." *United Coin Meter Co. v. Seaboard C. R.R.*, 705 F.2d 839, 846 (6th Cir. 1983).  "[T]he interests of justice are best served by a trial on the merits", rather than a default judgment. *Id.* at 846 (citation omitted). For all of the reasons stated herein, the Court should decide this case on the merits and should not default C.H. Robinson.

8

**B.** **C.H. Robinson responded to Plaintiffs' 8th and 9th sets of requests for production.**

C.H. Robinson has not willfully refused to respond to Plaintiffs' discovery requests. As explained above, C.H. Robinson produced written responses and documents on March 13 and March 18 in response to Plaintiffs' 8th set of requests for production. *See* Exhibit 1. On March 14, 2026, C.H. Robinson emailed Plaintiffs' counsel stating that C.H. Robinson was working on its responses to the 9th set and would provide those shortly. *See* Exhibit 1 at Exhibit D. C.H. Robinson then followed up with written responses and documents on March 20 and March 28, 2026. *Id.*[5]

C.H. Robinson also informed Plaintiffs on March 14, 2026 that it would produce any remaining witnesses "as soon as you are ready to depose them." *Id.* Further, C.H. Robinson agreed to extend the fact discovery cut-off date so the depositions could be taken[6]. *Id.* Lastly, C.H. Robinson offered to meet with Plaintiffs' counsel face-to-face to set remaining depositions and discuss any outstanding issues. *Id.* That in-person discussion occurred on March 16, 2026 at the depositions of two estate representatives. *Id.* Following this discussion, the parties agreed on dates for C.H. Robinson to produce two deponents pursuant to Rule 30(b)(6) in April. *Id.*

---

[5] Although Plaintiffs do not cite the specific grounds for their request that C.H. Robinson be deemed to have waived their objections to Plaintiffs' Eighth and Ninth Sets of Requests for Productions for failing to respond to those requests within 30 days of service, the only potential ground for such relief would be Fed. R. Civ. P. 34 (b)(2)(A). That provision provides, in pertinent part, that the party to whom a request for production of documents is directed "must respond in writing within 30 days after being served," and permits an extension of that time by stipulation or court order. Nothing in Rule 34(b)(2)(A) speaks to a waiver of objections that are not timely propounded.

A cardinal principle of statutory construction counsels against interpreting Rule 34 (b)(2)(A) to contain what amounts to an automatic waiver provision for untimely objections. Specifically, the canon that courts "generally presume[] that when Congress includes particular language in one section of a statute but omits it in another, Congress intended a difference in meaning." *Maine Community Health Options v. United States*, 590 U.S. 296, 314 (2020); *Fischer v. United States*, 603 U.S. 480, 508 (2024) (holding that courts "ordinarily resist reading words or elements into a statute that do not appear on its face," and that "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, [courts] generally presume that Congress did so intentionally" (internal quotations omitted)); *Russello v. United States*, 464 U.S. 16, 23 (1983) (same). As relevant here, Fed. R. Civ. P. 33(b)(4), pertaining to interrogatories, includes particular language that "[a]ny ground not stated in a timely objection [to an interrogatory] is waived unless the court, for good cause, excuses the failure." However, no such language is included in Fed. R. Civ. P. 34. Therefore, it should be presumed that the waiver language was intentionally omitted from Fed. R. Civ. P. 34. As such, there is no basis for holding that C.H. Robinson waived its objections to Plaintiffs' Eighth and Ninth Sets of Requests for Production.

[6] The undersigned is mindful of Section IV(a) of this Court's Standing Order providing the parties cannot extend discovery deadlines by agreement only.

9

The foregoing facts demonstrate that C.H. Robinson has complied with discovery in good faith. Thus, no sanctions order is required under Fed. R. Civ. P. 37 (a)(3). *See e.g.*, *Valdes v. Logistics Insight Corp.*, 2025 U.S. Dist. LEXIS 130321, *6 (E.D. Mich. July 9, 2025) (denying motion to compel as moot where defendant served discovery responses after the motion was filed and plaintiff did not dispute that responses were received).

## C.     Plaintiffs did not comply with this Court's meet and confer requirements.

Local Rule 37.1 requires that "[o]bjections, motions, applications, and requests relating to discovery shall not be filed in this Court under any provision in Fed. R. Civ. P. 26 or 37 unless the parties have first exhausted among themselves all extrajudicial means for resolving their differences." Further, this Court's standing order § IV(b) requires, in relevant part, that, "[i]n the absence of extraordinary circumstances, no discovery motion – such as a motion to compel … – shall be filed in a case assigned to the undersigned until the parties have participated in an informal discovery dispute conference as set forth in S.D. Ohio Civ. R. 37.1."

As noted in Exhibit 1, Plaintiffs did not attempt to have any telephonic or videoconference with C.H. Robinson's counsel prior to filing their Motion to Compel.  Nor did Plaintiffs seek an informal telephone conference with the Magistrate Judge supervising discovery before filing their Motion to Compel.  As such, sanctions against C.H. Robinson would be inappropriate.

Fed. R. Civ. P. 37(a)(1) provides a motion seeking to compel discovery must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action. "This Court's Civil Rule 37.1 similarly provides that 'motions…relating to discovery shall not be filed in this Court…unless the parties have first exhausted among themselves all extrajudicial means for resolving their differences.' S.D. Ohio Civ. R. 37.1 (emphasis added)." *SASC, LLC v. Sch.*

10

*Supply Connection, Inc.*, 2024 U.S. Dist. LEXIS 157835, *4 (S.D. Ohio Sept. 3, 2024) (holding that the meet-and-confer requirement is a prerequisite to a Rule 37 discovery motion).

This Court's decisions establish that Plaintiffs' failure to properly meet and confer defeats their Motion to Compel. *See, e.g., SASC, LLC*, 2024 U.S. Dist. LEXIS 157835, *4-5; *Crozin v. Crown Appraisal Grp.*, *Inc.*, 2011 U.S. Dist. LEXIS 90640, *5-8( S.D. Ohio Aug. 15, 2011) (sustaining denial of motion for protective order for failure to include certification of good-faith conferral and rejecting argument that certification was unnecessary because "any such discussions would have been futile" because the meet-and-confer requirement "is no idle formality or technical requirement"); *Lee v. United States*, 2020 U.S. Dist. LEXIS 174141, *4 (S.D. Ohio Sept. 22, 2020) (describing meet-and-confer requirement as a "prerequisite to a motion for protective order"); *DiOrio v. TMI Hosp.*, 2017 U.S. Dist. LEXIS 86695, *7-8 (N.D. Ohio May 19, 2017) (same).

Further, given the extraordinary volume of discovery requests that C.H. Robinson has responded to, and C.H. Robinson's immediate responses to the 8th and 9th sets after Plaintiffs' filing of the Motion to Compel, an award of expenses under Rule 37(a)(5) is unwarranted.

Lastly, Exhibit 1 to this Brief establishes C.H. Robinson was not aware of the 8th set until after the filing of Plaintiffs' Motion to Compel due to the mistake of its counsel. C.H. Robinson immediately complied when it learned of the discovery requests. As such, defaulting C.H. Robinson would penalize C.H. Robinson for the mistake of its counsel. An innocent party should not be punished with dismissal of his case as a result of the inadvertent neglect of its attorney. *See, e.g., Freeland v. Amigo*, 103 F. 3d 1271, 1277 (6th Cir. 1997).

**D.      C.H. Robinson did not fail to comply with a court order.**

There is also no basis to sanction C.H. Robinson for allegedly not complying with a court order. Following C.H. Robinson's discovery and voluntary disclosure of the Indiana Load, this

11

Court ordered C.H. Robinson on September 30, 2025 to provide responses to Plaintiffs' discovery as outlined in Plaintiffs' Third Supplemental Motion to Compel; to produce the policies and declaration pages for its entire tower of insurance coverage; and to ensure that its corporate representative had access to C.H. Robinson's Navisphere system at the time of its Rule 30(b)(6) deposition. ECF Doc. 109.

C.H. Robinson filed a Certificate of Compliance with the foregoing order, and the docket reflects that Plaintiffs did not assert a claim that C.H. Robinson had not fully complied. ECF Doc. 112. There is simply no argument regarding C.H. Robinson's compliance with this Court's Order.

Plaintiffs attempt to maneuver around this obvious and dispositive impediment by claiming that C.H. Robinson "deliberately manipulated evidence to make it look like it was unaware of and not responsible for the Indiana load." There is no evidence to support that claim. C.H. Robinson ran searches to attempt to determine if it was somehow connected to the Indiana load. See Exhibit 1 at Exhibit A. Further, C.H. Robinson's counsel attempted to contact BLF directly to learn the facts of the accident. See Exhibit 1 at Exhibit B. C.H. Robinson's counsel also attempted to contact BLF's counsel to discuss this matter and did not receive a return call. See Exhibit 1.

Likewise, there is no evidence to support Plaintiffs' claim that C.H. Robinson only disclosed its findings on the Indiana Load when it was "caught." To the contrary, the evidence establishes that C.H. Robinson did not know of Rocubert's alleged involvement with the Indiana Load until after it conducted supplemental searches in early 2025. Indeed, Plaintiffs admitted in their own filing, dated January 22, 2025, that they had just recently "located" BLF, ECF Doc 75:

> Recently, however, Plaintiffs have finally located BLF. BLF's lawyer, Hoss Hernandez out of Miami, has reached out to Plaintiffs. Mr. Hernandez has informed Plaintiffs that BLF's understanding is that, at the time of the crash, Rocubert was on his way to pick up another C.H. Robinson load, which, as he told the police investigating the crash, was in Indiana.

12

As noted above, Mr. Hernandez did not "reach out" to C.H. Robinson's counsel or even respond to emails and phone calls from C.H. Robinson's counsel. Nonetheless, C.H. Robinson still conducted supplemental searches based on Mr. Hernandez's purported comments to Plaintiffs' counsel and found the "bounced" Indiana Load and then immediately disclosed it.[7] See Exhibit 1; See ECF 79-1. There are simply no facts supporting a claim that C.H. Robinson only disclosed the Indiana Load when it thought it had been, or was about to be, "caught". See Exhibit 1.

The Rules of Civil Procedure expressly recognize that parties and their attorneys may modify and supplement their discovery disclosures based on new information that comes to light during the discovery phase of the case. Specifically, pursuant to Fed. R. Civ. P. 26(e)(1), a party may amend or supplement any disclosure or response to an interrogatory, request for production, or request for admission upon "learn[ing] that in some material respect the disclosure or response is incomplete or incorrect," provided they do so in a timely manner or as ordered by the court. C.H. Robinson has done just that, with explanation of the reason for the amendments.

Further, in the event this Court has any lingering concern that C.H. Robinson only disclosed the Indiana Load because it was about to be "caught," this Court can order C.H. Robinson to produce for *in camera* review, in a manner that preserves privilege, the attorney-client communications regarding this issue. C.H. Robinson has no doubt the privileged documents demonstrate exactly how C.H. Robinson searched to determine if the Indiana Load had been brokered to BLF, and how new information was located which C.H. Robinson immediately

---

[7] Despite purportedly "locating" BLF in January 2025, Plaintiffs did not depose BLF's corporate representative until January 5, 2026—nearly one year later, and 11 months after C.H. Robinson disclosed its knowledge of the Indiana Load. Plaintiffs have proffered no explanation for this delay. Additionally, Mr. Delgado testified during his deposition that his lawyer was in contact with Plaintiffs' counsel before the deposition. See Exhibit 4, Excerpts of Deposition of Alexander Delgado at p. 48-50.

13

disclosed . This Court's ordered *in camera* review of these documents would make it clear there is no support for Plaintiffs' claims of obstruction and C.H. Robinson acted in good faith.

Similarly, there is no evidence to support the claim that C.H. Robinson's "obstructionism" stalled this case for nearly two years. The deposition of Dayren Rocubert was taken on December 21, 2023. See Exhibit 2. Plaintiffs did not take another deposition until they took the depositions of C.H. Robinson employees Jacob Hoops and David Handeland on November 12, 2025. See Exhibit 1. Nothing prevented Plaintiffs from taking the depositions of other C.H. Robinson personnel, with or without documents C.H. Robinson objected to providing, and reserving the right to re-open the questioning pending resolution of the discovery dispute. Similarly, nothing prevented Plaintiffs from taking the depositions of non-parties, such as eyewitnesses, law enforcement, or emergency personnel prior to when they were taken in February 2026. See Exhibit 1. Nothing prevented Plaintiffs from taking the depositions of co-defendant Unique Freight Carriers, Inc. prior to March 2026 or now-dismissed defendant Walmart, Inc. C.H. Robinson did not grind the case to a nearly two-year halt; Plaintiffs made a deliberate choice on how to proceed.[8]

Lastly, Plaintiffs' assertion of prejudice is belied by their own words. Plaintiffs specifically state at page 11 of their Motion: "***And while Plaintiffs were able to obtain the needed information from a third party***, C.H. Robinson's obstruction prevented them from accessing the most key evidence in the case for 20 months." (Emphasis added). In Plaintiffs' own words, they got the information they believed they needed[9] and have not suffered actual prejudice in the presentation of their case—as fully evidenced by their ability to obtain expert reports from six separate retained expert witnesses.

---

[8] Notwithstanding Plaintiffs' own delay in pursing depositions, if Plaintiffs want to extend fact discovery to allow any further necessary depositions, C.H. Robinson has already indicated it has no objections to doing so. C.H. Robinson only wishes to avoid being penalized—and in the harshest manner possible—for Plaintiffs' discovery strategy.

[9] The evidence was provided by C.H. Robinson, not a third party. See Exhibit 1 at Exhibit C.

14

The best evidence that C.H. Robinson should not be sanctioned is that Plaintiffs did not seek sanctions when these issues first arose last year. After all, Plaintiffs agreed that the sanctions hearing previously set for October 23, 2025 should be stricken. See ECF Doc. 113. As explained above, the current discovery issue resulted from Wilson Elser's failure to timely request the discovery delineated in Plaintiffs' 8th and 9th Requests for Production from C.H. Robinson, thereby delaying service of C.H. Robinson's responses to said Requests. These are two entirely separate issues, and, under such circumstances, no sanctions are appropriate.

**E.      The instant case is unrelated to the Georgia state court case involving C.H. Robinson.**

In an attempt to justify application of the severe sanction of default, Plaintiffs call this Court's attention to an order in a Georgia state court matter in *Estelle v. C.H. Robinson*, Georgia Civil No. 23-C-07003-S1. Plaintiffs assert *Estelle* involved "less egregious discovery misconduct than what is involved here," and note that the *Estelle* Court found that C.H. Robinson "willfully and repeatedly, disregarded their discovery obligations and this Court's orders and instructions, and made overt misrepresentations to the Court." Plaintiffs' reliance on *Estelle* is misplaced.

For starters, the ruling in *Estelle* is the subject of a motion for reconsideration, which is attached hereto and which has not been ruled upon by the *Estelle* court. See Exhibit 3. As explained in C.H. Robinson's motion for reconsideration, the discovery issue in *Estelle* dealt with predictive AI data generated by an algorithm—an issue wholly unrelated to the questions currently *sub judice*. This Court should not base its decision on Plaintiffs' Motion to Compel in the instant case on what Plaintiffs claim transpired in a wholly separate case, involving different facts, law, and counsel.

Indeed, the factual details behind the Court's decision in *Estelle* are essentially unknown to this Court. This Court cannot, under these circumstances, rely on that order to support the claim that C.H. Robinson is somehow a serial discovery offender deserving of sanctions here. *See, e.g.,*

15

*Leor Exploration & Prod., LLC v. Aguiar*, 2013 U.S. Dist. LEXIS 1087, *19 (S.D. Fla. Jan. 2, 2013) (rejecting argument that order in unrelated state court case was relevant to disposition of motion for protective order; "the circumstances surrounding the state court's decision to enter the protective order in favor of the Drews in that case are simply not those before this Court. The dispute in the Drews' State Court Case entailed different parties, claims, procedural posture, and governing rules among other differences…consideration of the State Court Case is largely irrelevant to the calculus of whether to grant leave for a second round of depositions in this case.").

There is no record of misconduct before this Court on this matter. C.H. Robinson asserted objections to discovery, this Court issued an Order compelling C.H. Robinson's responses, and C.H. Robinson complied with the Order. There is no record of any intentional misrepresentations to the Court or any willful disregard of discovery obligations. Moreover, as noted above, there was no meet-and-confer discussion prior to Plaintiffs' filing of this Motion. C.H. Robinson itself was not informed of Plaintiffs' 8th Set of Requests for Production, and it acted promptly to comply with its discovery obligations. C.H. Robinson has done and will continue to do whatever is necessary for Plaintiffs to obtain discovery required for a disposition of this matter on the merits.

**F.** **If this Court finds that sanctions are warranted, default judgment is not appropriate.**

In considering whether to strike an answer under Rule 37(b)(2), a court is to consider: (1) whether the defendant's failure to cooperate in discovery is due to willfulness, bad faith or fault; (2) whether the plaintiff was prejudiced by the defendant's conduct; (3) whether the defendant was warned that failure to cooperate could lead to default; and (4) whether less drastic sanctions were imposed or considered before default was ordered. *United States v. Quebe*, 321 F.R.D. 303, 311 (S.D. Ohio 2017) (citing *United States v. Reyes*, 307 F.3d 451, 458 (6th Cir. 2002)). Although no one factor is dispositive, dismissal is "the sanction of last resort" and it should be imposed only

16

if the Court concludes that the party's failure to cooperate in discovery was willful, in bad faith, or due to its own fault. *Holmes v. Pipeline Dev. Co.*, 1999 U.S. App. LEXIS 2357, \*6 (6th Cir. Feb. 9, 1999). As discussed below, none of the four factors favor granting Plaintiffs' Motion.

### 1. There is no evidence of willfulness, bad faith, or fault.

In *Quebe*, *supra*, 321 F.R.D. 303, the plaintiff sought sanctions under Rule 37(b) for the defendants' allegedly willful failure to comply with a court discovery order, and requested that the court "strike the portion of Defendants' answer that relates to the research credit, resulting in a default judgment against Defendants on this issue; or, in the alternative, enter an order barring Defendants from introducing any evidence or contentions that were not included in their interrogatory responses." *Id.* at 310. In opposition, the defendants argued that the plaintiff's requested sanctions were "extreme and unwarranted under the facts given Defendants' good-faith effort to comply with discovery requests, continuous production of hundreds of thousands of documents, and attempts to offer multiple witnesses for numerous deposition dates." *Id.*

The court held that the first of the four factors considered by courts in determining whether to impose a default judgment pursuant to Fed. R. Civ. P. 37(b)(2)(A) did not favor imposing that "most severe sanction" because, while the defendants failed to "adequately respond" to the plaintiff's interrogatories and to comply with the Court's Order, the record did "not reveal that Defendants …. engaged in contumacious conduct or were perversely or stubbornly resistant to the Court's authority" because the defendants "did not completely fail to respond to Plaintiff's discovery requests; their responses to Interrogatories 2 and 11 and to the Court's Order were simply inadequate." *Id.* at 311.

Here, there is no question that C.H. Robinson has produced thousands of documents, responded to hundreds of Requests for Production, and produced multiple witnesses for deposition.

17

See Exhibit 1. While there was an unintentional error by counsel in initially responding to the 8th and 9th Requests for Production, C.H. Robinson has corrected that oversight, and responded to both.[10] There can be no credible argument asserted that C.H. Robinson completely failed to respond to Plaintiffs' discovery requests. And as to the Indiana Load information, C.H. Robinson reiterates that its failure to discover this information in its initial document search was not in bad faith, as fully discussed in ECF No. 79 and within this brief.

### 2. Plaintiffs have failed to establish prejudice.

In *Marietta Health Care Physicians, Inc. v. Yoak*, 2021 U.S. Dist. LEXIS 68239 (S.D.Ohio Apr. 8, 2021), the court held that "[t]he second factor, prejudice, is satisfied if the failure to provide discovery deprives the opposing party of information critical to their case *and* they are forced to expend significant time and resources addressing the discovery abuses." *Id.* at *9 (emphasis added). In that case, the plaintiff argued that "[t]he late disclosure of Defendant's claim for $802,813.14 in 'paid leave' [was] extremely prejudicial" because the defendant "waited until the last moment to disclose his demand for [] paid-leave" and plaintiff's "valuation professionals did not have anything on which to opine and Plaintiff was left unable to provide any rebuttal by the February 10, 2021 deadline." *Id.* at *10. Further, the delay forced the parties to reschedule their mediation. *Id.* But the court held that the plaintiff had *not* "suffered prejudice so high as to warrant sanctions" from the defendant's supplemental interrogatory responses because, "[a]t base, nothing has occurred here that has threatened the reliability of the fact-finding process, or impeded Plaintiff's ability to fully discover an issue." *Id.* at *11 (internal quotations and brackets omitted).

---

[10] C.H. Robinson also respectfully submits that the 9th set of requests for production, in particular, are overly broad and unduly burdensome. By way of example, these discovery requests seek every single document generated by, or communication sent to or from, C.H. Robinson's entire "marketing department" for a period of four years. These requests also seek a variety of other proprietary materials, such as C.H. Robinson's "competitive analyses" of the brokerage industry, its pricing bids and other business records with its customer Walmart, and all of its sales strategies and "thought leadership" work product for a period of six years. These discovery requests (and others) do not satisfy the proportionality requirement of Fed. R. Civ. P. 26 and are intended to increase the burden and expense of defense.

18

Here, regarding C.H. Robinson's delayed discovery of the Indiana Load, C.H. Robinson informed the Court and counsel of its error over one year ago and, since then, Plaintiffs have had the opportunity to take discovery informed by C.H Robinson's supplemental disclosures. Further, Plaintiffs did not spend time and money to re-take any depositions that had been taken prior to the discovery of the Indiana Load and have been able to obtain multiple expert reports to support their theory of the case at trial. *See Ketter v. City of Newark*, 2014 U.S. Dist. LEXIS 122672, \*15 (S.D. Ohio Sep. 3, 2014) (no prejudice to plaintiff where plaintiff "ultimately obtained the discovery he sought" and "the delay in receiving the discovery did not hinder plaintiff's ability to litigate his claim"). As such, the second factor favors the denial of Plaintiffs' request for default.

### 3. C.H. Robinson was not warned that it would be defaulted in this case.

In *Quebe*, *supra*, the court held that "the third factor—whether the party was warned that failure to cooperate could lead to dismissal and/or default judgment—favor[ed] not imposing the extreme sanction of default upon Defendants" because "Defendants ha[d] not yet been warned that they face default judgment." Additionally, "the fourth factor (consideration of less drastic sanctions) favor[ed] imposing a sanction on Defendants that [was] lesser than default because lesser sanctions ha[d] not yet been considered or imposed against them … [and] alternative sanctions will protect the integrity of the judicial process." *Quebe*, 321 F.R.D. at 312.

Here, it is undisputed that the Court has not warned C.H. Robinson that a failure to cooperate could result in the extreme sanction of default. Plaintiffs concede this in their own Motion: "[T]he Court has not yet expressly warned C.H. Robinson of the possibility it might impose a default judgment…." *See* Plaintiffs' Motion at 11. Nonetheless, Plaintiffs still argue this factor is met because of the *Estelle* case in Georgia. However, Plaintiffs offer no binding precedent to support the theory that a filing in wholly separate case (with different facts and governing law)

operates as effective notice in the case *sub judice* that default judgment could occur. C.H. Robinson asks the Court to reject this novel argument, as C.H. Robinson has not been warned in this case that its alleged failure to cooperate in discovery could lead to default.

### 4. Lesser available sanctions preclude default.

In applying the four factors the Sixth Circuit requires for Rule 37 motions, the court in *Design Basics, LLC v. Petros Homes, Inc.*, 2017 U.S. Dist. LEXIS 32061, *10-11 (N.D. Ohio Mar. 7, 2017), held that: (i) the alleged failure of the defendants to provide the detailed financial analysis requested by plaintiff was not due to willfulness, bad faith, or fault, as the defendants had produced all their records and were in the process of finalizing their calculations; (ii) the plaintiff would not be prejudiced by the defendants' inability to match each claimed expense in the job cost detail reports with the underlying documents, as the plaintiff could "make its own analysis of the records so that it can point out at trial whether defendant's records are worth the paper they are printed on"; (iii) the defendants had not been warned by the court that they would be sanctioned for failing to provide the analysis requested by plaintiff; and (iv) even if the defendants had failed to comply with the court's order, less drastic sanctions under Rule 37 would have to be considered first. With respect to the fourth factor, the court held: "Plaintiff has gone right past all of those other remedies and demanded that defendants be prevented from introducing evidence of their construction costs. That is far too drastic a sanction for what is being contended. And it would result in an unjustified windfall to plaintiff." *Id.* *10-11.

This is the exact situation before the Court here. There have been no prior sanctions levelled against C.H. Robinson, and other remedies short of default are available if this Court determines that sanctions are warranted. Granting Plaintiffs' Motion would result in a windfall to them.

For all of those reasons, Plaintiffs' Motion to Compel and for Sanctions should be denied.

20

Respectfully submitted,


/s/ Geoffrey A. Belzer
Geoffrey A. Belzer (Ohio #0071899)
Wilson Elser Moskowitz Edelman & Dicker LLP
161 North Clark Street, Suite 4500
Chicago, Illinois 60602
(312) 704-0550
Geoffrey.Belzer@wilsonelser.com
*Attorneys for Defendant C.H. Robinson*
*Worldwide, Inc.*

21

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on March 30, 2026, the foregoing document was electronically transmitted to the Clerk of the Court using the ECF System such that the foregoing received a copy of the attached document through the ECF System:

Michael Jay Leizerman (michael@truckaccidents.com)
Jonathan Bond (jon@truckaccidents.com)
The Law Firm for Truck Safety, LLP
3232 Executive Parkway, Suite 106
Toledo, Ohio 43606
Attorneys for Plaintiffs

Vincent E. Cononico (vecononico@mdwcg.com)
Marshall Dennehey Warner Coleman & Googin
127 Public Square, Ste. 3510
Cleveland, OH 44114
Attorney for Defendant Unique Freight Carriers

Crystal L. Maluchnik (crystal.maluchnik@janiklaw.com)
Janik L.L.P.
9200 South Hills Blvd., Suite 145
Cleveland, Ohio 44147
Alex B. Mahler (amahler@nicolaidesllp.com)
Nicolaides Fink Thorpe Michaelides Sullivan LLP
10 S. Wacker, 36th Floor
Chicago, IL 60606
amahler@nicolaidesllp.com
Attorney for Intervenor American Economy Insurance Company

*/s/ Geoffrey A. Belzer*

22

332765288v.1